UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| RICKY EDMONDS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:15-cv-65 |
| | ) | |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| GESTAMP CHATTANOOGA, LLC & | ) | |
| GESTAMP NORTH AMERICA, INC., | ) | Magistrate Judge Christopher Steger |
| | ) | |
| Defendants. | ) | |

## **M E M O R A N D U M**

Defendants Gestamp Chattanooga, LLC and Gestamp North America, Inc. move for summary judgment in their favor on all of Plaintiff Ricky Edmonds's claims. (Doc. 16.) Plaintiff asserts the following claims against Defendants: (1) interference under the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. §§ 2601 *et seq*.; (2) retaliation under the FMLA; and (3) workers' compensation retaliation under Tennessee Code Annotated § 50–6–114. Defendants additionally seek dismissal of all claims against Gestamp North America, Inc.

For the reasons explained below, the Court will **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment (Doc. 16). The Court will **DISMISS** all claims against Gestamp North America, Inc., and **DENY** summary judgment as to Plaintiff's FMLA interference claim, Plaintiff's FMLA retaliation claim, and Plaintiff's workers' compensation retaliation claim.

I.    **BACKGROUND**

Gestamp Chattanooga ("Gestamp") manufactures and assembles automotive parts and is a wholly owned subsidiary of Gestamp North America, Inc. ("Gestamp North America").[1] Plaintiff Ricky Edmonds ("Edmonds") began work at Gestamp in January 2012 as a parts maker.

On June 14, 2013, a supervisor asked Edmonds to assist in dismantling industrial shelving. Edmonds suffered a serious injury to his right shoulder while performing this work, and he filed a workers' compensation claim as a result of the injury. Edmonds's pain persisted, and he saw a physician, Dr. McKinley Lundy, who prescribed medication and instructed him to return if the pain did not subside. Edmonds continued to experience pain, so Dr. Lundy referred him to Dr. Mark Sumida, a specialist.

Dr. Sumida performed an MRI, which revealed Edmonds had torn his right rotator cuff. Dr. Sumida placed Edmonds on work restrictions limiting his ability to lift heavy objects and performed surgery to repair the torn rotator cuff on October 4, 2013. On October 23, 2013, Dr. Sumida released Edmonds to return to work with restrictions stating Edmonds could only perform light-duty work and could not use his right arm. Gestamp assigned Edmonds to light-duty work as a label maker, a job consisting of printing labels and sticking them on containers.

Edmonds returned to Dr. Sumida on November 11, 2013. Dr. Sumida issued new work restrictions for Edmonds, which prohibited him from using his right arm or working on an assembly line. Gestamp initially assigned Edmonds to various light-duty tasks, including label

---

[1] Unless otherwise noted, information in this section is drawn from Defendant's memorandum in support of their motion for summary judgment (Doc. 17 at 2–11) and Plaintiff's response to Defendant's motion for summary judgment (Doc. 19 at 1–12). Factual disputes and reasonable inferences regarding the underlying facts are presented in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

making, clerical work, and inspecting parts; however, Edmonds was later assigned to the press area of the plant. In the press area, Edmonds's duties involved organizing bins and moving scrap metal, requiring him to lift heavy objects and use both arms. Edmonds complained that these duties caused him pain in his shoulders on a number of occasions. Despite Edmonds's complaints, Gestamp never modified Edmonds's work responsibilities. Edmonds worked in the press area of the plant on work restrictions from Dr. Sumida until his termination in April 2014.

In March 2014, Edmonds missed work three times due to shoulder pain. Gestamp's attendance policy involves the assessment of attendance points against employees for unexcused absences. Various forms of discipline are imposed as attendance points accumulate, including termination when an employee has received six attendance points. Edmonds was assessed one attendance point each for his absences in March 2014—one point for leaving work early due to shoulder pain on March 17, 2014, one point for leaving work early due to shoulder pain on March 19, 2014, and one point for missing work on March 29, 2014 to have an MRI on his shoulder.[2] Edmonds was assessed an attendance point for his absence on March 29, 2014, a Saturday, despite Edmonds's assertion that he was not scheduled to work on March 29, 2014. Furthermore, Edmonds asserts that even had he been scheduled to work on March 29, 2014, he was not allowed to work on March 29, 2014 because Gestamp did not allow employees on work restrictions to work overtime, and working on a Saturday constituted working overtime.

---

[2] Edmonds complained of pain in both his shoulders in March 2014. Edmonds's left shoulder pain began in November 2013, after the surgery on his right shoulder. Edmonds asserts the pain in his left shoulder was a result of overworking his left shoulder in order to complete his job responsibilities, which involved moving scrap metal, while complying with his work restrictions, which forbid him from using his right arm. The March 29, 2014 MRI was conducted on Edmonds's left shoulder.

On April 3, 2014, Edmonds was informed by his supervisors that he was being moved from first shift to second shift. Edmonds told his supervisors he was disappointed by this assignment. On April 4, 2014, a previously scheduled vacation day for Edmonds, Edmonds called Gestamp's human resources department and asked for FMLA leave because he needed time to rest his shoulders. Edmonds also mentioned he was feeling sick. Gestamp's human resources generalist, Vickie Gilbert, informed Edmonds he did not qualify for FMLA leave because FMLA leave runs concurrently with workers' compensation.

Edmonds missed work on April 7 and 8, 2014, due to a serious illness. Edmonds was diagnosed with acute sinusitis and pharyngitis by Dr. Teresa Baysden on April 7, 2014. Dr. Baysden prescribed five-day courses of two different medications and provided Edmonds with a return-to-work form allowing Edmonds to return to work on April 10, 2014. Dr. Baysden later extended Edmonds's return-to-work form to April 11, 2014.

On both April 7 and 8, Edmonds left voicemails with two separate supervisors, Vickie Gilbert and Tony Cates, notifying them that he would be absent from work due to his illness. Gestamp claims not to have received a voicemail from Edmonds on either day. In addition to remembering the specific dates and general content of the voicemails, Edmonds asserts he is certain he left the voicemails because on both days he reached the personalized voice mailbox of each supervisor and recognized their name and voice in their greeting.

In addition to their attendance points system, Gestamp implements a "two-day no-call, no-show" policy, which involves treating an employee's absence without notice on two consecutive days as a voluntary resignation. Gestamp does not dispute that leaving a voicemail for a supervisor would constitute sufficient notice under this policy. On April 9, 2014, Gestamp

4

sent Edmonds a letter notifying him it had terminated his employment pursuant to this policy due to his absences on April 7 and 8.

## II.     STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

## III.    DISCUSSION

Defendants seek dismissal of all claims against Gestamp North America, Inc. Defendants also seek summary judgment on each of Plaintiff's claims: (1) interference under the FMLA; (2) retaliation under the FMLA; and (3) workers' compensation retaliation under Tennessee Code Annotated § 50–6–114. Defendants' arguments for summary judgment rely in part on the "sham affidavit doctrine." The Court will address Defendants' arguments under the sham affidavit doctrine prior to addressing each of Defendants' claims for summary judgment.

### A.     Claims Against Gestamp North America

As an initial matter, Defendants argue all claims against Gestamp North America should be dismissed because Gestamp North America is not Edmonds's employer. (Doc. 17.) Edmonds

did not respond to this argument (*see* Doc. 19), and has thus conceded dismissal of all claims against Gestamp North America is appropriate. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("A plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). All claims against Gestamp North America will therefore be dismissed.

### B. The Sham Affidavit Doctrine

Gestamp argues Edmonds's claim that he told Vickie Gilbert he was feeling sick during the April 4, 2014 conversation and Edmonds's claim that he left voicemails on April 7 and 8, 2014 should be excluded from consideration under the sham affidavit doctrine. *See French v. Lucas*, 836 F.3d 612 (6th Cir. 2016). The sham affidavit doctrine precludes parties from creating an issue for trial by submitting an affidavit that directly contradicts their prior sworn testimony. *Id.*

Regarding the content of the April 4 conversation, Edmonds states in his complaint that on approximately April 7, 2014 he requested time off due to sinusitis, that request was denied, when it was denied he asked about his rights under the FMLA, and in response he was told the FMLA was not available to him. (Doc. 1-1 ¶ 17–18.) In his deposition, when asked, "So Paragraph 18 [in which Edmonds states he was told the FMLA was not available for him] doesn't relate to the sinusitis or pharyngitis condition on April 7. Right?" Edmonds responded, "Yeah, because I hadn't—I hadn't talked with anyone." Edmonds later submitted an affidavit clarifying that he raised the issue of feeling sick in his April 4 conversation with Vickie Gilbert, and it was in that conversation she informed him he could not take FMLA leave. Gestamp argues the Court should not consider Edmonds's claim that he notified Vickie Gilbert he was sick in their April 4 conversation when ruling on its motion for summary judgment because Edmonds has created an issue for trial by filing a "sham affidavit."

6

The Court declines to exclude this claim under the sham affidavit doctrine. As an initial matter, Edmonds's alleged contradiction is ambiguous; Edmonds appeared to be confused during this part of the deposition, as he asked several times which paragraph the parties were discussing. Edmonds's affidavit is also consistent with his complaint, in which he states he was told the FMLA was not available to him on approximately April 7. Edmonds clarified in his affidavit the conversation in question in fact took place on April 4, the last workday prior to April 7. This supports the inference that Edmonds was confused at his deposition, as opposed to the inference that he attempted to manufacture an issue for trial.

With regard to the voicemails, Edmonds initially stated he left voicemails for two of his supervisors before visiting the doctor on April 7, and that in the voicemails he advised his supervisors he would be absent from work because he had pharyngitis. (Doc. 18 at 99–100). Gestamp points out an inconsistency in this statement—Edmonds could not have known he had pharyngitis at the time of the April 7 voicemail because he had not yet visited the doctor and received a diagnosis. Edmonds has since submitted an affidavit clarifying that he did not identify his specific diagnosis in the April 7 voicemail, but instead did so in the April 8 voicemail, which was left after he received a diagnosis. (Doc. 19-6.) Gestamp argues the Court should not consider these alleged voicemails when ruling on their motion for summary judgment because Edmonds has created an issue for trial by filing a "sham affidavit."

The Court declines to exclude consideration of the alleged voicemails under the sham affidavit doctrine. There is no inconsistency related to Edmonds's claim that he left voicemails on April 7 and 8 informing his supervisors that he would be absent from work due to illness, and that in at least one of the voicemails he informed them of his serious medical condition. The material fact at issue is whether Edmonds provided notice of his absences and his condition via

voicemail. The question of which voicemail contained notice of his diagnosis is not a material fact, as notice in either voicemail is sufficient to support his claim.

Thus, for the purposes of ruling on this motion, the Court will assume Edmonds told Vickie Gilbert he was feeling sick in their April 4 conversation and that Edmonds left voicemails for both Vickie Gilbert and Tony Cates on both April 7 and 8. *See Matsushita*, 475 U.S. at 587 (requiring courts to view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party when ruling on motions for summary judgment).

### C. FMLA Interference

The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the statute. 29 U.S.C. § 2615(a)(1); *Stimpson v. UPS*, 351 F. App'x 42, 45 (6th Cir. 2009). To succeed on an FMLA interference claim, a plaintiff must show: (1) he is an eligible employee; (2) the defendant is an employer; (3) the plaintiff was entitled to leave under the FMLA; (4) the plaintiff gave the defendant notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled. *Stimpson v. UPS*, 351 F. App'x 42, 45 (6th Cir. 2009). Gestamp concedes Edmonds is an eligible employee and Gestamp is an employer.

Edmonds asserts he requested FMLA leave on April 4, 2014, and was told he did not qualify. Edmonds also asserts he provided notice to Gestamp via voicemail on April 8 that he needed to miss work due to sinusitis and pharyngitis, which triggered Gestamp's duty to notify Edmonds of his FMLA rights. *See* 29 C.F.R. § 825.300(b)(1). Edmonds never received FMLA leave related to his April 4 request and never received notice of his rights related to his April 8 voicemail. For the purposes of summary judgment, the Court accepts Edmonds's assertions as true, and these assertions satisfy the notice and denial elements. Thus, the only remaining point

of contention related to the elements above is whether Edmonds was entitled to benefits under the FMLA.[3]

With regard to entitlement, Edmonds argues Gestamp interfered with his FMLA rights by telling him he was not qualified for FMLA leave when he was, in fact, qualified, and by failing to provide him notice of his FMLA rights after he informed them of a serious medical condition. On April 4, 2014, Edmonds asked Vickie Gilbert if he could take FMLA leave. She responded that Edmonds was not eligible for FMLA leave because FMLA leave runs concurrently with workers' compensation. Because Edmonds was eligible for FMLA leave as an employee working on light-duty restrictions, *see* 29 C.F.R. § 825.220(d), Gestamp interfered with Edmonds's FMLA rights by telling him he was not eligible. *See Wallner v. Hilliard*, 590 F. App'x 546, 550 (6th Cir. 2014) ("Because an employer interferes with an employee's exercise of FMLA rights whenever the employee does not receive the rights that are due to her under the statute, the intent of the employer is irrelevant to whether an FMLA violation has occurred under the interference theory.").

Additionally, Edmonds claims he notified his employer via voicemail on April 8, 2014 that he was diagnosed with acute sinusitis and pharyngitis and excused from work for four days. This triggered Gestamp's obligation to notify Edmonds of his FMLA rights. 29 C.F.R. § 825.300(b)(1) ("When an employee requests leave, or when the employer acquires knowledge

---

[3] Gestamp also argues the FMLA is not a strict liability statute, and thus to survive summary judgment Edmonds must establish that Gestamp's violation caused him harm. *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006). Gestamp vigorously argues that even if they interfered with Edmonds's FMLA rights, Edmonds did not suffer harm as a result of that interference. The Court sees no merit in this argument, as Defendants' proffered reasons for terminating Edmonds were his unexcused absences on April 7 and 8, 2014. (Doc. 16 at 1.) If Edmonds had received FMLA leave, his absences on April 7 and 8 would not have been unexcused, he would have been in compliance with Gestamp's attendance policy, and he would not have been terminated.

that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances."). *See also Woods v. DiamlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (finding the employer's duty is triggered when the employee provides enough information to the employer to suggest that the employee's health condition could be serious—the employee need not mention FMLA leave); *Festerman v. County of Wayne*, 611 F. App'x 310, 315 (6th Cir. 2015).

Edmonds thus raises two possible grounds for entitlement to FMLA leave in April 2014, his shoulder pain and his illness. Defendants stipulated for the purpose of summary judgment that sinusitis and pharyngitis are serious health conditions under the FMLA, for which an individual would be entitled to FMLA benefits. (Doc. 16 at 16.) Edmonds's claims have thus satisfied the entitlement element for the purposes of summary judgment, and the Court need not also address whether the shoulder pain was FMLA qualifying.

Instead of arguing Edmonds's condition was not serious enough to qualify for FMLA leave, Gestamp argues Edmonds's claim that he provided sufficient notice of a serious condition in his April 8 voicemail is "blatantly contradicted by the record, so that no reasonable jury could believe it," and thus the Court should not adopt Edmonds's version of events for the purposes of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 280 (2007). Edmonds's supervisors deny receiving voicemails from Edmonds on April 7 or 8. Additionally, Gestamp claims its call logs from those days do not show calls from Edmonds, and Gestamp points to the inconsistency in Edmonds's initial statements regarding the content of the April 7 voicemail, in which he seemed to have identified his specific illness prior to his diagnosis, as evidence that Edmonds never left either voicemail. Edmonds, on the other hand, claims to remember the specific dates and general

content of the voicemails, and asserts he is certain he left the voicemails because on both days he reached the personalized voice mailbox of each supervisor and recognized their name and voice in their greeting. The Court finds a reasonable juror could believe Edmonds's version of events, and thus this question must be resolved by a jury.

The Court will thus deny summary judgment as to Edmonds's FMLA interference claim.

### D. FMLA Retaliation

To establish a claim of retaliation under the FMLA, Edmonds must show: (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between his protected activity and the adverse employment decision. *Nawrocki v. United Methodist Ret. Cmty.*, 14 F. App'x 334, 339 (6th Cir. 2006). If Edmonds makes this showing, the burden shifts to Gestamp to articulate a legitimate, non-retaliatory justification for the adverse employment action. *Id*. If Gestamp makes this showing, the burden shifts back to Edmonds to show Gestamp's articulated justification is a pretext for retaliation. *Id*. Edmonds cannot establish pretext, however, if Gestamp's articulated justification, while ultimately incorrect, was based on an honestly held belief. *See Jones v. St. Jude Med. S.C., Inc.*, 504 F. App'x 473, 477 (6th Cir. 2012) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).

Edmonds availed himself of a protected right under the FMLA when he requested FMLA leave on April 4 and when he notified his employer of a serious medical condition on April 8. 29 C.F.R. § 825.300(b)(1). Edmonds then suffered an adverse employment decision when he was terminated on April 9. The remaining issue regarding Edmonds's *prima facie* case is thus whether there is a causal connection between Edmonds's April 4 FMLA request or April 8 voicemail and Edmonds's termination.

Edmonds argues the proximity in time between his protected activity and his termination is sufficient evidence of a causal connection to survive summary judgment. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). This argument is persuasive, especially when viewed in the context of Gestamp's alleged harassment of Edmonds in response to his work restrictions and workplace injuries. Edmonds was terminated on April 9, the day following his alleged April 8 voicemail in which he notified Gestamp of his illness, and five days after his request to take FMLA leave. The April 9 termination followed several months in which Edmonds was required to perform work he claims violated his work restrictions, despite his complaints of pain. Edmonds was also assessed attendance points three times in the month preceding his termination for missing work due to his shoulder injuries, and was demoted to second shift on April 3, shortly after he was assessed his third attendance point on March 29. This is sufficient evidence of a causal connection between Edmonds's exercise of a protected activity and his termination.

Gestamp argues it terminated Edmonds for a legitimate, non-retaliatory reason—his violation of the company's two-day no-call, no-show policy due to his absences on April 7 and 8. Edmonds, however, responds by arguing Gestamp's proffered justification is mere pretext for his retaliatory discharge on the ground that Getamp's justification has no basis in fact. *See Curry v. Brown*, 607 F. App'x 519, 525 (6th Cir. 2015). Edmonds claims there is no basis in fact for his termination under the two-day no-call, no-show policy because he left voicemails notifying Gestamp of his absences on both April 7 and 8.

In response, Gestamp relies on the "honest belief rule," and argues its proffered explanation for Edmonds's termination should survive his demonstration of pretext because it honestly believed he did not leave voicemails on April 7 or 8. *See Smith v. Chrysler Corp.*, 155

F.3d 799, 807 (6th Cir. 1998) (citing *Pesterfield v. TVA*, 941 F.2d 437, 443–44 (6th Cir. 1991) ("Thus, according to *Pesterfield,* in order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.")). To support this argument, Gestamp states none of its employees, including Tony Cates and Vickie Gilbert, the individuals Edmonds claims to have called, received voicemails from Edmonds on April 7 or 8. Additionally, Gestamp states it contacted its technology department to search the company's call logs for incoming calls or voicemails from Edmonds on April 7 or 8. According to Gestamp, the logs showed no incoming calls or voicemails from Edmonds on either day, and Gestamp thus fired Edmonds based on an honestly held belief that he violated the two-day no-call, no-show policy.

Gestamp's arguments under the honestly held belief rule directly contradict Edmonds's assertion that he called and left voicemails on April 7 and 8. At the summary judgment stage, the Court must view the facts and all reasonable inferences in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. The Court also finds it inappropriate to apply the honestly held belief rule to settle disputed issues of fact. *See Kurincic v. Stein, Inc.*, 30 F. App'x 420, 431 (6th Cir. 2002) (J. Gibson, dissenting) ("[T]he 'honest belief' rule, if not applied with punctilious care for preserving issues of fact, can make a serious incursion into [a] plaintiff's ability to prove discrimination circumstantially."). The Court thus assumes for the purposes of this motion that Edmonds called and left voicemails for both Vickie Gilbert and Tony Cates on April 7 and 8.

Gestamp provides no explanation for how it could have honestly believed Edmonds did not leave voicemails on April 7 and 8 if Edmonds did, in fact, leave voicemails on those dates. Based

13

on the facts provided, the only way Gestamp could have honestly believed Edmonds did not call and leave voicemails would have been if both Vickie Gilbert and Tony Cates's voicemail and call log systems malfunctioned on both April 7 and 8. Such a malfunction would have necessarily allowed Edmonds to hear the personal voicemail greetings of Vickie Gilbert and Tony Cates and to record messages for each of them on both days, but would have caused the system not to register or record any of the four incoming calls or messages from Edmonds. In fact, implicit in Gestamp's claim that it searched the call logs for incoming calls from Edmonds on April 7 and 8 is the admission that call logs existed for those days—i.e. that other parties were able to call into Gestamp's system on the days in question, these calls were recorded in call logs for those days, and thus the system functioned normally in response to calls from other parties, but malfunctioned in response to calls from Edmonds.

Gestamp's proffered explanation for its honestly held belief thus directly contradicts Edmonds's assertion that he left voicemails on April 7 and 8. At the summary judgment stage, the Court assumes the truth of Edmonds's assertion, which does not allow the Court to accept Gestamp's assertion of an honestly held belief.

The Court will thus deny summary judgment as to Edmonds's FMLA retaliation claim.

### E. Workers' Compensation Retaliation

To establish a claim of workers' compensation retaliation, Edmonds must show: (1) he was an at-will employee of Gestamp at the time of his injury; (2) he made a claim against Gestamp for workers' compensation benefits; (3) Gestamp terminated his employment; and (4) the claim for workers' compensation benefits was a substantial factor in Gestamp's motivation to terminate his employment. *Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800, 805 (Tenn. 2015). As with his FMLA retaliation claim, if Edmonds is able to establish a *prima facie* case of workers'

14

compensation retaliation, the burden shifts to Gestamp to demonstrate a legitimate, non-retaliatory reason for firing Edmonds. *Newcomb v. Kohler Co*., 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006). If Gestamp meets this burden, Edmonds must demonstrate Gestamp's proffered reason for his termination is mere pretext. *Id*. Edmonds cannot establish pretext, however, if Gestamp's articulated justification, while ultimately incorrect, was based on an honestly held belief. *Thayer v. Tyson Foods, Inc*., 355 F. App'x 886, 890–92 (6th Cir. 2009) (applying the honest belief rule to a workers' compensation retaliation claim based on Tennessee state law).

Gestamp concedes the first three elements of the *prima facie* case, but argues Edmonds's workers' compensation claim was not a substantial factor in Gestamp's motivation to terminate his employment. Alternatively, Gestamp argues that even if Edmonds were able to establish a *prima facie* case, Gestamp's decision to terminate Edmonds was based on an honestly held belief.

In contrast to Edmonds's FMLA retaliation claim, Edmonds is unable to rely on temporal proximity between his workers' compensation claim and his termination, as Edmonds filed his workers' compensation claim shortly after his shoulder injury in June 2013, nearly a year before his termination. Instead, Edmonds relies on a series of incidents and harassing conduct related to his workers' compensation claim, which in the aggregate, he argues, amount to sufficient evidence of a connection between Edmonds's workers' compensation claim and his eventual termination. Edmonds points to his supervisors' failure to file an incident report until six days after his injury, despite company policy requiring them to file a report immediately. Edmonds also points out that he was required to work in violation of his doctor's work restrictions, first by being required to work on the assembly line, then by being required to move scrap metal, despite company policy requiring his supervisors to comply with his work restrictions. Edmonds also complained to his supervisors about feeling pain while working on several occasions, but his work responsibilities

15

were never modified. Edmonds was assessed attendance points for missing work on a Saturday, a day when he was not allowed to work due to his overtime restrictions, and for missing work for medical treatment. Around the same time, Edmonds was also demoted from first shift to second shift, and finally, Edmonds was fired for an alleged violation of Gestamp's two-day no-call, no-show policy, despite the fact that he called and left voicemails for two separate supervisors on each day.

For the purposes of summary judgment, the Court accepts these allegations as true, and finds they are sufficient evidence that Edmonds's workers' compensation claim was a substantial factor in Gestamp's motivation to terminate his employment. The Court's analysis of Gestamp's proffered non-discriminatory justification for firing Edmonds, Edmonds's pretext argument, and Gestamp's honestly held belief argument in the FMLA context applies in the workers' compensation context as well. As was the case with Edmonds's FMLA retaliation claim, the Court finds Gestamp proffered a non-discriminatory justification for Edmonds's termination, Edmonds responded with evidence of pretext, and Gestamp is unable to prevail on its argument under the honestly held belief rule because the Court assumes for the purposes of summary judgment that Edmonds left voicemails for his supervisors on both April 7 and 8.

The Court will thus deny summary judgment as to Edmonds's workers' compensation retaliation claim.

## IV. CONCLUSION

For the reasons explained above, the Court will **DISMISS** all claims against Gestamp North America, and **DENY** summary judgment as to Plaintiff's FMLA interference claim and Plaintiff's FMLA and workers' compensation retaliation claims.

An appropriate Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**